# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL WARREN,<br>   *Plaintiff,*<br>  v.<br>ANDREA E. NAUGLE,<br>   *Defendant.* | CIVIL ACTION NO. 18-4921 |

### MEMORANDUM

**RUFE, J.**                                **December 6, 2019**

  Plaintiff Daniel Warren, who is incarcerated at SCI Forest, filed this civil action pursuant to 42 U.S.C. § 1983 and Pennsylvania law against the Lehigh County Court of Common Pleas, the Lehigh County Clerk of Judicial Courts, Judge Douglas G. Reichley, and Lehigh County Clerk of Judicial Records Andrea E. Naugle.[1] The Court previously dismissed all claims except those against Naugle.[2] Defendant Naugle has filed a motion to dismiss, which will be granted for the reasons set forth below.

### I.   BACKGROUND[3]

  Warren filed a Writ of Quo Warranto[4] in the Commonwealth Court, which was transferred to the Lehigh County Court of Common Pleas. Warren asserted that the respondents, who were Pennsylvania state officials serving "as members of the Pennsylvania Board of

---

[1] Compl. at 2. The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

[2] Doc. No. 8.

[3] Unless otherwise stated, the background is drawn primarily from the Complaint and the accompanying exhibits and at this stage of the proceedings is presumed to be true.

[4] A "quo warranto action is the sole and exclusive method to try title or right to public office" in Pennsylvania and "is addressed to preventing a continued exercise of authority unlawfully asserted." *Spykerman v. Levy*, 421 A.2d 641, 648 (1980) (citations omitted); *see also Commonwealth ex rel. Pennsylvania Attorney Gen. Corbett v. Griffin*, 946 A.2d 668, 672 n.2 (2008) (citing *In re Bd. of Sch. Dirs. of Carroll Township*, 180 A.2d 16, 17 (1962) ("Quo warranto is the proper means by which to test title or right to public office.")).

Probation and Parole and/or as parole agents," should all be removed from office for failing to have their oaths of office properly filed.[5] Warren stated that the respondents "unlawfully and illegally . . . changed the maximum expiration date of [Plaintiff's] original sentence."[6] The respondents named in the writ filed preliminary objections and Warren filed preliminary objections in response. The court overruled Warren's preliminary objections. Naugle, in her capacity as Clerk of Judicial Records, mailed notice of the ruling to Warren. Warren did not receive the notice and the mail was returned to the court. Naugle resent the mail to Warren, but it was again returned.

Warren learned of the court's ruling when he received a brief from the respondents in support of their preliminary objections, which discussed the ruling in connection with the procedural history of the case. Accordingly, Warren filed a notice with the court informing the court that he did not receive notice of the order. The docket reflects that Warren also filed a motion seeking to dismiss the respondents' preliminary objections.[7] On November 22, 2017, the court dismissed his case. Naugle mailed the court's dismissal order to Warren, but as with the last order, it was returned as undeliverable. Naugle re-mailed the order, but it was again returned.

After having failed to hear anything from the court, Warren requested a copy of the docket, which he received. He learned that his case had been dismissed and that he had not received the order. When he investigated, he learned from individuals in the prison mailroom that the mail from the court could not be delivered because it did not include Warren's inmate number on the envelope. According to the individuals in the mailroom, when mail is returned, the reason for the return is stamped on the envelope. Warren alleges that Naugle and the court

---

[5] Doc. No. 14 at 30.

[6] *See id.* at 31 (quoting Writ of Quo Warranto).

[7] Compl. at 22.

were thus aware of the problem but failed to correct it by placing his inmate number on outgoing mail, thereby preventing him from being served with court orders. Warren also alleges that Naugle failed to comply with her duties under the relevant procedural rules by failing to serve him with court orders.[8]

Warren filed a motion to reopen his case based on the state court's failure to serve him with court orders. He did not receive a response for approximately three months, so he filed an application to appeal *nunc pro tunc* seeking to appeal out of time due to the service failures. The court granted that motion because "it appear[ed] likely that there was a breakdown in the Court's operation regarding [Warren's] ability to either obtain mail or file a timely appeal."[9]

In the meantime, Warren initiated a civil action in the Lehigh County Court of Common Pleas against the Commonwealth of Pennsylvania, Lehigh County, the Lehigh County Clerk of Judicial Court, and Andrea E. Naugle, apparently based on the service failures raised in the instant case.[10] Judge Reichley, who was assigned to the case, denied Warren's motion to proceed *in forma pauperis* and required him to pay the $175 fee to proceed with the action. Warren moved for reconsideration, but Judge Reichley "disregarded" the motion and ordered the clerk to enter a judgment of non pros.[11] Warren moved to reopen that judgment, but his filing was returned to him on the basis that if it was a new case, he was required to pay the fee or move for *in forma pauperis* status and, if the document should have been filed in an existing case, it

---

[8] *See* Pa.R.C.P. No. 236(2).

[9] Compl. at 25.

[10] *See id.* at 9.

[11] *Id.*

3

required a case number.[12] Judge Reichley subsequently denied the motion for reconsideration of *in forma pauperis* status.

Based on those allegations, Warren initiated the instant civil action claiming that the Defendants violated his right to access the courts and his due process rights. He also raises claims, apparently under Pennsylvania law, for "obstruction of the administration of the law," "breach of official duty," "official oppression," negligence, and abuse of process.

In a memorandum opinion, this Court, *sua sponte*, dismissed with prejudice Warren's claims against Lehigh County Court of Common Pleas, the Lehigh County Clerk of Judicial Courts, and the Honorable Douglas G. Reichley for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[13] Accordingly, Naugle was left as the only Defendant in this case.

Defendant Naugle now moves to dismiss the §1983 claims asserting: 1) that Warren's §1983 claims against Naugle in her official capacity are barred by the Eleventh Amendment; 2) Warren's §1983 claims against Naugle in her personal capacity are barred by the doctrine of quasi-judicial immunity; and, alternatively, 3) Warren has failed to state §1983 claims against Naugle upon which relief may be granted.[14] Defendant also moves to dismiss the state claims—asserting immunity and failure to state a claim.[15]

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[16]

---

[12] *Id.* at 31.

[13] Doc. No. 8.

[14] Doc. No. 14 at 4–5.

[15] *See id.* at 13–15.

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

4

and "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a claim.[17] Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."[18] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[19]

Where the plaintiff is *pro se*, the allegations must be liberally construed and evaluated under a less stringent standard than a pleading prepared by an attorney.[20] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[21] Although the Court must draw all reasonable inferences from the allegations in favor of the plaintiff,[22] it "need not accept as true 'unsupported conclusions and unwarranted inferences,'"[23] or the plaintiff's "bald assertions" or "legal conclusions."[24]

---

[17] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

[18] *Twombly*, 550 U.S. at 555 (citations omitted).

[19] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted). At the motion to dismiss stage, a court determines only whether a plaintiff will be permitted to seek evidence in support of the claims in the complaint. *See Twombly*, 550 U.S. at 556, 558–59.

[20] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[21] *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted). Plaintiff also filed a Motion for Judicial Notice requesting that this Court to take judicial notice as to certain allegations that Plaintiff asserts in his Complaint. [Doc. No. 26]. The facts alleged are not the proper subject of judicial notice. Fed. R. Evid. 201. However, in the context of considering this motion to dismiss [Doc. No. 14], the Court will consider and accept the facts alleged in the Complaint as true, and will draw all logical inferences in favor of Plaintiff as the non-moving party. *See Twombly*, 550 U.S. at 564.

[22] *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citation omitted).

[23] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[24] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (quotation marks omitted).

### III. DISCUSSION

#### A. Federal Claims

##### 1. Whether Warren's §1983 claims against Naugle in her official capacity are barred by the Eleventh Amendment

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."[25] "Suits against state officials in their official capacity . . . should be treated as suits against the State."[26] Therefore, the Eleventh Amendment "bar remains in effect when State officials are sued for damages in their official capacity."[27]

The Supreme Court "has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity"[28] and Pennsylvania has not waived Eleventh Amendment immunity.[29] Recognizing this, Plaintiff concedes that his claims against Naugle in her official capacity are barred by the Eleventh Amendment.[30] Therefore, the Eleventh Amendment bars any claims against Naugle in her official capacity.

##### 2. Whether Warren's §1983 claims against Naugle in her personal capacity are barred by quasi-judicial immunity

Judges are absolutely immunized from a civil rights suit for money damages arising from their judicial acts.[31] "The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary

---

[25] *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citing *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945)).

[26] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[27] *Graham*, 473 U.S. at 169 (citations omitted).

[28] *Id.* at 169 n.17.

[29] 1 Pa. C.S. § 2310.

[30] Doc. No. 27 at 10.

[31] *Addlespurger v. Corbett*, 461 F. App'x 82, 85 (3d Cir. 2012).

might be impaired by exposure to potential damages liability."[32] Under the functional approach adopted by the Supreme Court, the doctrine only applies when an act is "judicial."[33]

"Those who perform functions closely associated with the judicial process, such as court clerks and prothonotaries, enjoy quasi-judicial immunity when performing a function directly related to the court's decision-making activities or carrying out a judicial order."[34] "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function."[35] To determine whether an act is "judicial" the Court must look to "the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity.[36]

Plaintiff alleges that Naugle failed to properly mail him notice that his preliminary objections were overruled and then that his claim was dismissed. Naugle asserts that she is entitled to quasi-judicial immunity.[37] However, the act of mailing notices to Plaintiff was a purely ministerial function. Pennsylvania law required that Naugle "immediately give written notice of the entry of . . . any other order or judgment to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order or judgment."[38]

---

[32] *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993).

[33] *See id.*; *see also Forrester v. White*, 484 U.S. 219, 229 (1988) ("It was the nature of the function performed, not the identity of the actor who performed it, that informed our immunity analysis.").

[34] *Walton v. Denlinger*, No. 05-5170, 2007 WL 4615960, at *3 (E.D. Pa. Dec. 21, 2007) (citing *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969)).

[35] *Antoine*, 508 U.S. at 436 (citing *Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20 (1976)); *see also Cleavinger v. Samaar*, 474 U.S. 193, 200 (1985).

[36] *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

[37] Doc. No. 14 at 8–9.

[38] Pa.R.C.P. No. 236(2).

Therefore, Naugle "exercise[d] no discretion in the performance of [her] duties similar to the discretion exercised by judges or 'quasi-judicial' officials."[39]

This is not a situation where Naugle, acting her role as clerk, performed a function normally reserved for a judge such as issuing "an order releasing a court record to the public."[40] Rather, just as numerous courts have held that "[q]uasi-judicial immunity does not extend to a court employee's performance of ministerial or non-discretionary tasks, such as docketing of filings," the act of mailing a notice of entry of judgment to an unrepresented party is a non-discretionary function that is not entitled to quasi-judicial immunity.[41] Accordingly, Naugle cannot be characterized as a "quasi-judicial" official and, therefore, she is not entitled to absolute "quasi-judicial" immunity from liability under §1983 for the allegedly improper performance of her ministerial duties.[42]

Because the Court concludes that Naugle is not entitled to immunity from personal liability, the Court must determine—for both Warren's claim of a violation of his due process rights and for his claim of a denial of his right to access the courts—whether Warren has stated a claim upon which relief can be granted.

---

[39] *Allen v. Dorsey*, 463 F. Supp. 44, 47 (E.D. Pa. 1978).

[40] *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 770 (3d Cir. 2000).

[41] *Walton*, 2007 WL 4615960, at *3 (citing *Tucker v. I'Jama*, 173 F. App'x. 970, 971–72 (3d Cir. 2006) (denying immunity to court clerk due to non-discretionary duty to docket all papers presented for filing or to notify the filer of a deficiency); *Dorsey*, 463 F.Supp. at 47 ("Although the Clerk of the Court and his agents have important duties in the judicial process, their duties, such as docketing and filing papers with the court, are ministerial and mandatory acts which do not merit insulation form liability for damages by a grant of absolute 'quasi judicial' immunity."); *Brightwell v. Miller*, No. 92-2649, 1993 WL 429083, at *2 (E.D.Pa. Oct. 21, 1993) (denying quasi-judicial immunity to a court clerk because he "exercises no discretion in the performance of the duties of docketing and filing papers")); *see also Stacey v. City of Hermitage*, 178 F. App'x 94, 102 n.5 (3d Cir. 2006) ("When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges—that is, because they exercise a discretionary judgment as part of their function.").

[42] *See id.*

### 3. Whether Warren has stated a §1983 claim upon which relief can be granted based on a due process violation

In Count I, Warren alleges a deprivation of due process based on Naugle's failure to properly mail him court orders and judgments. Defendant moves to dismiss, asserting that Warren had no property or liberty interest in receiving the documents from the state court.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ."[43] "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."[44] "To state a claim under §1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[45] Therefore, a threshold question is "whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."[46]

"[T]he range of interests protected by procedural due process is not infinite."[47] In support of his claim that his procedural due process rights were violated, Plaintiff alleges that the notice (or procedures) he received was inadequate. But Plaintiff has not provided any support for the proposition that his failure to receive notice of court orders constituted an infringement of a liberty or property interest. Nor can the Court find any precedent for this proposition.

---

[43] U.S. Const. amend. XIV, § 1.

[44] *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

[45] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

[46] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)); *see also Haley v. Kintock Grp.*, 587 F. App'x 1, 3 (3d Cir. 2014), *as amended* (Oct. 7, 2014).

[47] *Ingraham v. Wright*, 430 U.S. 651, 672 (1977) (citation omitted).

i. Property Interest

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[48] "Such entitlements are, of course, not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."[49] "Although the underlying substantive interest is created by 'an independent source such as state law,' *federal constitutional law* determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."[50]

Assuming, without deciding, that Pennsylvania created an individual entitlement through the mandatory language of §236(a)[51]—"[t]he prothonotary shall immediately give written notice of the entry of . . ."—this individual entitlement to receive court orders and judgments would not "constitute a 'property' interest for purposes of the Due Process Clause."[52] Not only does the right to receive notice of court orders not "resemble any traditional conception of property," it also "does not 'have some ascertainable monetary value,' as even [the] '*Roth*-type property-as-entitlement' cases have implicitly required."[53] Additionally, "the alleged property interest here arises incidentally, not out of some new species of government benefit or service, but out of a function that government actors have always performed—to wit," providing litigants with notice

---

[48] *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

[49] *Id.* (citations and quotations omitted).

[50] *Id.* at 757 (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)).

[51] Pa.R.C.P. No. 236(a).

[52] *Castle Rock*, 545 U.S. at 766.

[53] *Id.* (quoting Merrill, The Landscape of Constitutional Property, 86 Va. L.Rev. 885, 964 (2000)).

10

of court orders and judgments.[54] Therefore, for purposes of the Due Process Clause, Warren did not have a property interest in receiving court orders and judgments.

ii. Liberty Interest

Like a property interest, a "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."[55] The traditional notion of "liberty" "encompass[ed] freedom from bodily restraint and punishment."[56] The concept of "liberty" has been expanded to include various other protected interests including the right of school children to be free from school authorities inflicting "appreciable physical punishment,"[57] state action that harms reputation as long as it also results in the loss of a statutory entitlement,[58] and numerous statutorily created entitlements involving prisoner confinement."[59] This Court is unaware of any conception of the due process "liberty interest" that includes Warren's claim—that he was improperly mailed court orders and judgments.

In sum, for purposes of the Due Process Clause, Warren's claim does not implicate either protected property or liberty interests. Therefore, even after accepting of all Warren's factual allegations as true and construing the complaint in the light most favorable to Warren, the Court concludes that Warren is not entitled to relief on his due process claim.[60]

---

[54] *Id.* at 766–67; *see also Burella v. City of Philadelphia*, 501 F.3d 134, 145 (3d Cir. 2007).

[55] *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

[56] *Ingraham*, 430 U.S. at 674 (citing *Rochin v. California*, 342 U.S. 165 (1952); *see also Kansas v. Hendricks*, 521 U.S. 346, 356 (1997) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

[57] *Id.*

[58] *See Paul v. Davis*, 424 U.S. 693, 711–12 (1976)

[59] *See e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 556–558 (1974); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Sandin v. Conner*, 515 U.S. 472 (1995); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

[60] *Phillips*, 515 F.3d at 233 (quoting *Pinker*, 292 F.3d at 374 n.7) (quotation marks omitted).

11

### 4. Whether Warren has stated a §1983 claim upon which relief can be granted based on a violation of his access-to-court right

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."[61] "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[62] Moreover, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"[63]

Warren alleges that, in 2017, Naugle mailed a series of orders to him that were returned as "undeliverable" because Naugle failed to include his inmate number.[64] This included the Court of Commons Pleas' November 22, 2017 order dismissing Warren's complaint on two grounds: 1) because he failed to request that the Lehigh County District Attorney or Pennsylvania Attorney General file a quo warranto action before filing his claim; and 2) because he failed to properly serve the defendants.[65]

On June 14, 2018, the Court of Common Pleas granted Warren's application to appeal *nunc pro tunc* because "it appear[ed] likely that there was a breakdown in the Court's operation regarding [Warren's] ability to either obtain mail or file a timely appeal."[66]

---

[61] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

[62] *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

[63] *Id.* at 205–06 (quoting *Harbury*, 536 U.S. at 416–17).

[64] Compl. at 3–6, 22.

[65] Doc. No. 14 at 27–28.

[66] Compl. at 25.

Pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure,[67] Warren then filed with the Court of Common Pleas his statement of matters complained of on appeal and, a few weeks later, a supplemental statement.[68] With regard to the first ground for dismissal, the Court of Common Pleas explained that its November 22, 2017 decision had been based on *Fraternal Order of Police, Queen City Lodge No. 10 v. City of Allentown*,[69] which held that a private party who does not first ask both the Attorney General and the local district attorney to bring a quo warranto action always lacks standing to bring such an action.[70] After considering Warren's appeal arguments, the court explained that the Pennsylvania Supreme Court had expressly disapproved of the holding in *Fraternal Order of Police, Queen City Lodge No. 10* because "a private party with a special interest in the matter may institute a quo warranto action without first notifying the Attorney General or the local district attorney."[71] Therefore, the Court of Common Pleas concluded that "[d]ismissing Plaintiff's petition on the first ground may have been improvident" because no finding had been made as to whether Warren had a special interest.[72] However, the court explained that it had also dismissed Plaintiff's complaint based on the second ground in the November 22, 2017 order—because Warren "failed to effect proper service upon any of the Defendants."[73]

---

[67] Pa.R.A.P. 1925. Pursuant to § 1925, after an appellant files a notice of appeal, the trial court may order them to file a statement of matters complained of on appeal listing the issues they wish to raise on appeal. The trial court then writes an opinion addressing those issues. *See Maddrey v. Giroux*, No. 15-487, 2015 WL 13738769, at *3 (E.D. Pa. Nov. 10, 2015) (citing Pa.R.A.P. 1925).

[68] Doc. No. 14 at 30.

[69] 894 A.2d 224, 227 (Pa. Commw. Ct. 2006).

[70] Doc. No. 14 at 31.

[71] *Id.* (quoting *Reed v. Harrisburg City Council*, 995 A.2d 1137, 1140 (2010)).

[72] *Id.*

[73] *Id.* at 32.

Warren has not stated a claim upon which relief can be granted for two reasons. First, Warren did not lose a chance to assert his claim because the Court of Common Pleas granted his application to appeal *nunc pro tunc*.[74] Warren was then given the opportunity to file both a statement of matters complained of on appeal and a supplemental statement.[75] The Court of Common Pleas considered Warren's appeal arguments, and even withdrew one of its holdings, before explaining that Warren's complaint was dismissed because of improper service.[76] Warren then had the opportunity to appeal the Court of Common Pleas' decision to the Superior Court.[77] Therefore, Warren did not lose his chance to pursue his quo warranto claim as a result of Naugle failing to properly send him the earlier orders from the Court of Common Pleas.

Second, Warren's underlying quo warranto claim was frivolous. In a nearly identical quo warranto action filed by Warren against members of the Pennsylvania Board of Probation and Parole and parole agents employed by the Board, the Commonwealth Court made the finding that Warren lacked a special interest in the matter.[78] The court explained that "Warren made no allegations in his complaint that he, as a private party, has a special interest in Appellees' offices or employment, or that he suffered any damages separate from damages suffered by the public generally as a result of Appellees' decision making."[79] The court further explained that although Warren asserted that he had a special interest because the appellees "did not have the authority to recalculate his maximum sentence date, this allegation relates to what has already been done under Appellees' authority rather than Appellees' specific right to hold and exercise their powers

---

[74] Compl. at 25.

[75] Doc. No. 14 at 30.

[76] *See id.* at 31–32.

[77] Warren's appeal was dismissed because he failed to file a brief. *See id.* at 12.

[78] *See Warren v. Potteiger*, 2018 WL 4224366, at *3 (Pa. Commw. Ct. Sept. 6, 2018).

[79] *Id.*

of office."[80] Therefore, the court ruled that because a "quo warranto is addressed to preventing a continued exercise of authority unlawfully asserted, rather than to correct what has already been done under the authority," Warren's claim was "frivolous" because he had failed to request that the Lehigh County District Attorney or Pennsylvania Attorney General file a quo warranto action before filing such an action on his own behalf.[81]

Because Warren also failed to request that the Lehigh County District Attorney or Pennsylvania Attorney General file a quo warranto action before filing the underlying claim in this case—a claim that the defendants improperly recalculated his maximum sentence which was the same claim that the Commonwealth Court held failed to provide Warren with a special interest—this claim, too, was frivolous.

### B. State Claims

Without the §1983 claims, Warren is left with only state claims.[82] "Federal courts are courts of limited jurisdiction."[83] "Under 28 U.S.C. § 1367, 'a prerequisite to the federal court's exercise of pendent jurisdiction over a plaintiff's state law claims is that at least one claim based on the court's original diversity or federal question jurisdiction is before the court.'"[84] "It is well established that in an action with both federal and state claims, 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims

---

[80] *Id.*

[81] *Id.* at *3–4 (citing *Spykerman*, 421 A.2d 641).

[82] Warren alleges that Naugle engaged in the "Obstruction of the Administration of the Law" (Count III), committed a "Breach of Official Duty" (Count IV), engaged in "Official Oppression" (Count V), acted with "Negligence" (Count VI), and committed "Abuse of Process" (Count VII).

[83] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

[84] *Fleming v. Warren*, No. 19-2926, 2019 WL 5086962, at *6 (E.D. Pa. Oct. 10, 2019) (citing *Polite v. Rendell*, No. 08-5329, 2010 WL 1254334, at *4 (E.D. Pa. Apr. 1, 2010)).

should be dismissed as well.'"[85] Therefore, the Court declines to exercise supplemental jurisdiction over Warren's state law claims.

IV. **CONCLUSION**

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss the Complaint. An appropriate Order follows.

---

[85] *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 F. App'x 507, 511 (3d Cir. 2005) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (codified by 28 U.S.C. § 1367(c)(3) (2004)); *see also Byrd v. Shannon*, 715 F.3d 117, 128 (3d Cir. 2013); *Rendell*, 2010 WL 1254334, at *4 (quoting 28 U.S.C. § 1367(c)(3)) ("When 'the district court has dismissed all claims over which it has original jurisdiction,' the district court has the express authority to decline to exercise supplemental jurisdiction over any related state law claims.").